**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| COSTAR REALTY INFORMATION, INC.,<br><br>                     Plaintiff,<br><br>         v.<br><br>REALMASSIVE, INC., JOSHUA MCCLURE, CRAIG HANCOCK, JASON VERTREES, and CRAIG NEGOESCU,<br><br>                     Defendants. | Civil Action No. 1:15-cv-440<br><br>**JURY TRIAL**<br>**DEMANDED** |

## COMPLAINT

1.      CoStar Realty Information, Inc. ("CoStar"), along with its affiliates, is a leading provider of commercial real estate information to brokers and other professionals.

2.      CoStar brings this suit against RealMassive, Inc. ("RealMassive") and its executives (referred to collectively herein as "Defendants") to redress Defendants' copyright infringement.  Upon information and belief, Defendants' business is based, in significant part, on the willful and systematic theft of CoStar's intellectual property—as evidenced by the fact that Defendants, without permission, are displaying scores of CoStar's copyrighted photographs on Defendants' website.  As a consequence of Defendants' unlawful conduct, CoStar is entitled to, among other remedies, millions of dollars in damages for copyright infringement.

* * * * *

3.      At enormous effort and expense, CoStar and its affiliates have developed one of the most comprehensive commercial real estate information databases available.  That database

integrates photographs of commercial properties and researched and verified information about those properties.  In turn, the database provides the basis for analytical products and services that CoStar and its affiliates offer to its customers.

4.      The CoStar database facilitates commercial real estate transactions; supports better decisionmaking by investors, brokers, buyers, and sellers of such real estate; and brings greater transparency and efficiency to the commercial real estate marketplace.

5.      CoStar and its affiliates license the content of their database to commercial real estate professionals, including brokers, for a subscription fee.  Those fees, which vary according to the scope of access a user seeks, generate a significant portion of CoStar's and its affiliates' revenue.

6.      Subscribers then use the information in the database to facilitate their business, including incorporating the licensed CoStar content—such as CoStar's copyrighted photographs—into commercial real estate listings featured on their websites.

7.      The database content also is the foundation for commercial real estate listing marketing platforms that CoStar and its affiliates offer directly to those buying and selling commercial real estate.

8.      CoStar's photographs, as well as the other information and materials in the database, therefore are central to CoStar's and its affiliates' business.  For this reason, CoStar protects its intellectual property by, among other things, regularly registering its photographs with the United States Copyright Office.

9.      Defendants' business, upon information and belief, is based, in significant part, on unlawfully exploiting CoStar's intellectual property.

10.     Defendants operate a website, "realmassive.com," that displays commercial real estate listings for markets across the United States.  Upon information and belief, Defendants acquire those listings, including the photographs within them, at least in part by copying content from other internet sites without authorization from the owners of the intellectual property incorporated in those listings.

11.     In particular, RealMassive's website prominently displays CoStar's copyrighted photographs of commercial real estate located in multiple metropolitan areas across the United States.  But CoStar has not granted Defendants any rights over any of its copyrighted photographs.  Defendants have taken, copied, published, distributed, and publicly displayed those photographs without authorization to further their business and generate profits for themselves.

12.     Accordingly, RealMassive intentionally—and on a national scale—has infringed CoStar's copyrights, in violation of federal law.  RealMassive acts through the individual Defendants, who are instrumental in RealMassive's unlawful activities and themselves have infringed CoStar's copyrights.  Moreover, as senior executives of RealMassive, the individual Defendants have caused, contributed to, and/or induced RealMassive's infringement.

13.     Defendants' own statements confirm their blatant disregard for the law.  In remarks before the Urban Land Institute, Defendant Joshua McClure, RealMassive's President, explained that he did not believe in intellectual property rights as they applied to commercial real estate information, terming them "unfair."  Instead, Mr. McClure called for his view of the "laws of nature" to govern, which would permit the unauthorized use of another's copyrighted works.[1]

---

[1] Urban Land Institute, *Increasing Real Estate's Bandwidth: Leveraging the Internet and Open Data Sources*, YouTube (Oct. 30, 2014), https://www.youtube.com/watch?v=cFPCIGStw20 (last visited May 20, 2015).

14.     Defendants' unlawful actions have harmed CoStar in ways that cannot be measured fully and cannot be remedied fully by monetary damages.  CoStar brings this lawsuit to obtain damages and compensation for Defendants' conduct and an injunction preventing further irreparable harm.

### THE PARTIES

15.     Plaintiff CoStar is a corporation organized and existing under the laws of the State of Delaware with corporate offices located at 1331 L Street, N.W., Washington, DC 20005.

16.     Defendant RealMassive, upon information and belief, is a corporation organized and existing under the laws of Delaware with its principal place of business located at 1717 West Sixth Street, Ste. 400, Austin, TX 78703.  According to WHOIS, a protocol providing the registered users of domain names, the domain name www.realmassive.com is registered to RealMassive.

17.     Defendant Joshua McClure is the co-founder and president of RealMassive, having previously served as RealMassive's chief executive officer.  Upon information and belief, he is domiciled in Texas and resides at 106 Riverview Cove, Suite 1, Georgetown, Texas 78628.  Upon information and belief, Mr. McClure personally participated in and directed, and benefitted from, RealMassive's infringement.

18.     Defendant Craig Hancock is the co-founder and chief executive officer of RealMassive, having previously served as RealMassive's president.  Upon information and belief, he is domiciled in Texas and resides at 16108 Spillman Ranch Loop, Austin, Texas 78738.  Upon information and belief, Mr. Hancock personally participated in and directed, and benefitted from, RealMassive's infringement.

19.     Defendant Jason Vertrees is the chief technology officer of RealMassive.  Upon information and belief, he is domiciled in Texas and resides at 4802 Sage Hen Drive, Austin, Texas 78727.  Upon information and belief, Mr. Vertrees personally participated in and directed, and benefitted from, RealMassive's infringement.

20.     Defendant Craig Negoescu is the vice president of creative and design at RealMassive.  Upon information and belief, he is domiciled in Texas and resides at 7801 East Oltorf Street, Unit 1, Austin, Texas 78741.  Upon information and belief, Mr. Negoescu personally participated in and directed, and benefitted from, RealMassive's infringement.

21.     Defendants McClure, Hancock, Vertrees, and Negoescu are collectively referred to as the "Individual Defendants."

22.     Upon information and belief, at all times relevant hereto, Defendants acted under common ownership and control and/or served as the agents of one another.

## JURISDICTION AND VENUE

23.     This action arises under the Copyright Act, 17 U.S.C. § 101 *et seq*.  The Court has federal question jurisdiction over claims arising under that statute pursuant to 28 U.S.C. §§ 1331 and 1338(a).

24.     The Court has personal jurisdiction over RealMassive because, among other reasons, RealMassive's principal place of business is in Austin, Texas.

25.     The Court has personal jurisdiction over the Individual Defendants because, among other reasons, they reside in Texas and have done, and are doing, business in Texas.

26.     Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c) and 1400(a) because Defendants reside in this judicial district and a substantial part of the events or omissions giving rise to CoStar's claims occurred in this judicial district.

5

# FACTUAL ALLEGATIONS

## I.     COSTAR AND ITS BUSINESS

27.     Like many technology companies, CoStar's business began in its founder's basement with a simple idea:  empower commercial real estate brokers with researched, unbiased commercial property information.  Since its founding, and thanks to investment in excess of one billion dollars, and the efforts of more than 2,300 employees, CoStar and its affiliates have become a leading provider of commercial real estate information.

28.     All of CoStar's and its affiliates' products revolve around one asset:  their database of commercial real estate information, which includes millions of copyrighted photographs.  The database is part of an integrated suite of online services that include information about space available for lease, tenants, comparable sales, and properties for sale.  CoStar and its affiliates generate and update the database's content at a cost of over $70 million each year.

29.     CoStar's research team has more than 1,200 trained professionals who each year make millions of changes to the database, canvass more than half a million properties nationwide, and take more than one million new photographs.

30.     By offering tools and analytics that utilize its database, CoStar and its affiliates have armed commercial real estate buyers and sellers with critical information.  Businesses searching for a new office or location can browse available commercial real estate vacancies across multiple brokerages in a given market and customize search results using over 150 different criteria.  When a business decides to target a vacancy, CoStar and its affiliates provide comparable space information, allowing the potential lessee or buyer to intelligently evaluate an offer.

31.     Brokerages also use CoStar in their day-to-day business.  Pursuant to licenses, brokerages use CoStar's professional, copyrighted photographs to market their listings and connect with buyers whom they otherwise would not meet.  And when a property owner asks its brokerage whether it should buy, hold, or sell real estate, many brokerages turn to historical trends data offered by CoStar and its affiliates to provide a confident answer.

32.     Constant innovation drives the success of CoStar and its affiliates.  Last year, *Forbes* magazine recognized the CoStar group as one of the world's most innovative growth companies.

## II.     COSTAR'S INTELLECTUAL PROPERTY

33.     CoStar's intellectual property is at the root of the CoStar database and therefore is central to its business.  A key element of CoStar's intellectual property is its repository of photographs of commercial real estate.  CoStar owns those photographs and registers a selection of them with the United States Copyright Office.

34.     CoStar and its affiliates take other steps to protect the CoStar intellectual property.  For example, individuals seeking to advertise or find commercial real estate space can post and search listings through a marketplace operated by a CoStar affiliate.  If the listing party is also a CoStar service subscriber, it may use CoStar's photographs, under license, in connection with its listings.  The CoStar affiliate-operated marketplace advises users that all of the marketplace's content is copyrighted, and users cannot "reproduce or transmit" such information without "express written consent."

35.     As discussed above, CoStar also licenses its copyrighted photographs and database content to commercial real estate brokerages for use on their own websites subject to various restrictions, including a prohibition on sublicensing.

36.     Some brokers choose to use either CoStar Connect or LoopLink, which are services that allow commercial real estate brokers to license CoStar's and its affiliates' technology and content, including CoStar's photographs, to market property listings on their corporate websites.  The CoStar Connect and LoopLink services generate and display listings within the broker-branded website.

37.     Every page on a CoStar Connect- and LoopLink-powered website includes a link to terms of use.  Both services' terms of use warn persons accessing the website that the database "constitute[s] the valuable property and copyrighted information of" CoStar and forbids such persons from uploading, posting or otherwise transmitting any portion of" CoStar's information. LoopLink pages also include a copyright warning advising that website viewers may not "reproduce or transmit the information" without express written consent.

## III.     REALMASSIVE AND ITS UNLAWFUL BUSINESS MODEL

38.     Upon information and belief, RealMassive's business plan is built, at least in part, upon infringing CoStar's proprietary content.  RealMassive is free-riding on the efforts of thousands of CoStar employees and the hundreds of millions of dollars that CoStar has invested. After interviewing RealMassive founders Josh McClure and Craig Hancock, the *Austin Business Journal* reported:

> [I]t's no longer a crazy notion that information fiercely protected by huge data brokers such as CoStar Group could become free and available to all.
>
> "The impossible is happening.  It's not a matter of whether we can do it.  We're doing it now," Hancock said.[2]

---

[2] Jan Buchholz, *RealMassive Rolls Out Across the U.S., but Will the Money Follow?*, Austin Business Journal (Nov. 26, 2014), http://www.bizjournals.com/austin/blog/real-estate/2014/11/realmassive-rolls-out-across-the-u-s-but-will-the.html?page=all (last visited May 20, 2015).

39.     RealMassive is indeed "doing it now," making CoStar's "fiercely protected" content "free and available" online at realmassive.com.  And Defendants are not shy about touting their unlawful business model:  In another recent interview, RealMassive chief executive officer Hancock boasted that Defendants had "created a gateway into what was a walled-off data set. . . . And now, we control the gateway to that data.  And the gateway is pretty much wide open."[3]

40.     Upon information and belief, RealMassive's plan to steal and profit from CoStar's copyrighted content is being executed on a national scale.  RealMassive launched in thirty-two cities in six months, with users of its website "doubling every month" according to an interview of RealMassive president Josh McClure conducted by the *New York Times*.[4]  According to CEO Hancock, RealMassive is "spreading across the country as fast as possible."[5]  RealMassive chief technology officer Vertrees recently told a group of programmers in Austin that RealMassive aspires to become "the conduit through which *all* commercial real estate information will be traveling."[6]

---

[3] Tim Melvin, *Interview with Founders of RealMassive.com Craig Hancock and Joshua McClure*, Benzinga (April 23, 2015), http://www.benzinga.com/opinion/15/04/5416243/interview-with-founders-of-realmassive-com-craig-hancock-and-joshua-mcclure#ixzz3YGIR04OR (last visited May 20, 2015).

[4] Vivian Marino, *A Conversation with Joshua McClure*, N.Y. Times (Feb. 3, 2015), http://www.nytimes.com/2015/02/04/realestate/commercial/a-conversation-with-joshua-mcclure.html?_r=0 (last visited May 20, 2015).

[5] Tim Melvin, *Interview with Founders of RealMassive.com Craig Hancock and Joshua McClure*, Benzinga (April 23, 2015), http://www.benzinga.com/opinion/15/04/5416243/interview-with-founders-of-realmassive-com-craig-hancock-and-joshua-mcclure#ixzz3YGIR04OR (last visited May 20, 2015).

[6] Austin Tech Live, *Austin Python Meetup 2014-10-08*, YouTube (Nov. 6, 2014), https://www.youtube.com/watch?v=cbLoyM4EOC4 (last visited May 20, 2015).

41.     Upon information and belief, RealMassive's unlawful scheme operates as follows:

42.     RealMassive obtains scores of pre-existing commercial real estate information, including copyrighted CoStar content to which it has no rights, and copies the content it wishes to duplicate, including CoStar-copyrighted photographs, onto computer servers that it owns or that are provided to it.

43.     RealMassive then republishes and publicly displays that content—including, without CoStar's authorization, CoStar's copyright-protected photographs—on the RealMassive website, www.realmassive.com.

44.     The consequent mass infringement of CoStar's copyrighted photographs enables RealMassive to exploit the property and work of others, and thereby quickly launch in new markets with the minimum of investment.  RealMassive chief technology officer Vertrees has explained the process as follows:  RealMassive has its "data sources, and in the morning we can ingest the data into the system.  By the afternoon, we can launch a new market."[7]

45.     In short, upon information and belief, Defendants' business model is built upon copying without permission and regurgitating other people's data, including CoStar's copyrighted photographs, in an intentional and systematic way.

46.     Upon information and belief, Defendants' business model reflects the fact that following a lawful approach—taking and developing their own database of millions of photographs and other information—would be both cost and time prohibitive.  RealMassive would not be able to "ingest" data in the morning and "launch new market" in the afternoon

_____

[7] *RealMassive Changes the Commercial Real Estate Market with Google Cloud Platform*, Google Cloud Platform, https://cloud.google.com/customers/realmassive/ (last visited May 20, 2015).

without preying on the intellectual property of others.  RealMassive's purported plan to launch in seventy U.S. markets by the end of 2015 would be virtually impossible for a start-up if it were not free-riding on CoStar's multi-million dollar, ongoing investment in copyrighted photographs.[8]

47.     As well as publicly displaying CoStar's photographs, RealMassive also distributes the data it has copied.  Mr. McClure, RealMassive's founder and now president, explained in remarks at the Urban Land Institute that "you can get all the data that we have—all of the publicly available [sic] information that we have. . . .  There is no place else on the internet where you can do that."[9]  In other words, RealMassive widely distributes its trove of other people's data—including CoStar's copyrighted content—to anyone with an internet connection.

48.     Upon information and belief, RealMassive's unlawful scheme is the product of the Individual Defendants' actions.  Indeed, the Individual Defendants are all senior executives of RealMassive, and RealMassive acts through the Individual Defendants (and other RealMassive employees), who engage in the conduct described herein.

49.     Upon information and belief, in addition to infringing CoStar's copyrights themselves, the Individual Defendants personally directed and participated in, exercised control over, and benefited from the specific infringing conduct detailed below, and therefore have caused, contributed to, and/or induced RealMassive's infringement.  This has included, but is not

---

[8] Tim Melvin, *Interview with Founders of RealMassive.com Craig Hancock and Joshua McClure*, Benzinga (April 23, 2015), http://www.benzinga.com/opinion/15/04/5416243/interview-with-founders-of-realmassive-com-craig-hancock-and-joshua-mcclure#ixzz3YGIR04OR (last visited May 20, 2015).

[9] Urban Land Institute, *Increasing Real Estate's Bandwidth: Leveraging the Internet and Open Data Sources*, YouTube (Oct. 30, 2014), https://www.youtube.com/watch?v=cFPCIGStw20 (last visited May 20, 2015).

limited to, the adoption and pursuit of a business plan dependent upon massive copyright infringement.

## IV.    EXAMPLES OF DEFENDANTS' INTENTIONAL INFRINGEMENT OF COSTAR'S COPYRIGHTED CONTENT

50.    Upon information and belief, Defendants specifically and intentionally have copied CoStar's copyrighted photographs and other content without CoStar's authorization.

51.    Upon information and belief, following Defendants' unauthorized copying, RealMassive's employees review at least some of the data that Defendants have collected from other websites.  Indeed, Mr. McClure has claimed that RealMassive "ha[s] an entire department . . . that 'scrubs' data."[10]  Accordingly, upon information and belief, Defendants know they are infringing the intellectual property of others, including CoStar.

52.    Upon information and belief, after "scrubbing" (*i.e.*, closely reviewing) the information RealMassive collects from other websites, Defendants thereafter have republished and displayed CoStar's photographs and other content—CoStar's intellectual property—on the RealMassive website.

53.    Although the full breadth of Defendants' operation and consequent copyright infringement cannot be known until the discovery process is completed, CoStar is aware of multiple instances of Defendants unlawfully copying, republishing, distributing and publicly displaying CoStar's intellectual property without CoStar's permission.

54.    Indeed, the RealMassive website is replete with CoStar-copyrighted content.  A sample of 115 instances of infringement found on realmassive.com are attached as Exhibit A. CoStar owns the exclusive rights in each of the infringed photographs detailed in Exhibit A and

---

[10] Urban Land Institute, *Increasing Real Estate's Bandwidth: Leveraging the Internet and Open Data Sources*, YouTube (Oct. 30, 2014), https://www.youtube.com/watch?v=cFPCIGStw20 (last visited May 20, 2015).

has validly registered each of the photographs with the United States Copyright Office either before Defendants' acts of infringement or within three months of its first publication. Defendants copied, republished, distributed and publicly displayed each of these copyrighted photographs on RealMassive's website without authorization.

55.     By themselves, the examples of Defendants' infringement summarized in Exhibit A establish the breadth of Defendants' intentional unlawfulness and render Defendants liable for millions of dollars in damages.  But the true scope of Defendants' infringement likely is much broader.  The examples in Exhibit A merely are a snapshot of Defendants' infringement, taken from sixteen of RealMassive's purported thirty-three markets, over a period of a few days, suggesting they are a mere fraction of Defendants' actual infringement.

56.     That said, this sample of Defendants' infringement itself evidences Defendants' systematic efforts to exploit CoStar's intellectual property.  For example, Defendants have displayed CoStar-copyrighted photographs that *bear CoStar's watermark* on RealMassive's website:

Listing for "The Rotunda, Suite 455," located at
4201 Congress Street, Charlotte, NC 28209

www.realmassive.com[11]

   Commercial Real Estate in Real-Time                    Log In



< Return to

The Rotunda, Suite 455                                    Available: Now
4201 Congress Street, Charlotte, NC 28209



---

[11] *The Rotunda, Suite 455*, RealMassive, https://www.realmassive.com/us/nc/charlotte/office-space/the-rotunda/455/5410454465675264 (last visited May 20, 2015).

57.     Defendants also have displayed CoStar-copyrighted photographs that *bear CoStar's logo* on RealMassive's website:

Listing for "2527 Distribution Street," located at
2527 Distribution Street, Charlotte, NC 28203

www.realmassive.com[12]





58.     In addition, Defendants have displayed CoStar-copyrighted photographs without the CoStar logo or watermark on RealMassive's website:

---

[12] *2527 Distribution Street*, RealMassive,
https://www.realmassive.com/us/nc/charlotte/industrial-space/2527-distribution-street/details/6691970466447360 (last visited May 20, 2015).

Listing for "Crossroads Corporate Center II, Suite 300," located at
20800 Swenson Drive, Waukesha, WI 53186

www.realmassive.com[13]                                    Photo from CoStar Database

    

Listing for "One Rogers Street," located at
1 Rogers Street, Boston, MA 02142

www.realmassive.com[14]                                    Photo from CoStar Database

    

---

[13] *Crossroads Corporate Center II, Suite 300*, RealMassive,
https://www.realmassive.com/us/wi/waukesha/office-space/crossroads-corporate-center-
ii/300/5577723606990848 (last visited May 20, 2015).

[14] *One Rogers Street*, RealMassive, https://www.realmassive.com/space/4855905208238080
(last visited May 20, 2015).

59.     Defendants' infringement runs deeper than the displaying of CoStar photographs on the RealMassive website, as detailed in Exhibit A.  For example, Defendants also have copied, published, distributed and publicly displayed CoStar-copyrighted photographs, without authorization, in tutorials and brochures created for and distributed to third-party real estate brokerages by Defendants:

RealMassive Tutorial
Published February 26, 2015

Slide from RealMassive Tutorial[15]                                    Photo from CoStar Database

---

[15] RealMassive, *Marketing Manager Onboarding*, SlideShare, http://www.slideshare.net/RealMassive/marketing-manager-onboarding (last visited May 20, 2015).

RealMassive Brochure[16]                              Photo from CoStar Database



In other words, Defendants are trading on CoStar's intellectual property to promote their

business to potential customers.

60.    Upon information and belief, Defendants know they are not authorized to copy,

republish, display, or distribute CoStar photographs on or via the RealMassive website, or in

their marketing materials.

61.    Indeed, Defendants' infringement is willful, intentional, volitional, and of a

purposeful nature.  Defendants' own statements confirm that fact.  *See supra* ¶¶ 38–47.

Similarly, Defendants' actions demonstrate their willful disregard for CoStar's intellectual

property.  For example, in addition to copying, republishing, distributing, and publicly

_____

[16] *RealMassive Brochures*, Bēhance, https://www.behance.net/gallery/18557717/RealMassive-
Brochures (last visited May 20, 2015).

displaying photographs featuring the word "CoStar" or the CoStar logo, Defendants have

affirmatively rebranded CoStar-copyrighted photographs with RealMassive's own logo:

Listing for "One American Center, Suite 1600" located at
600 Congress Avenue, Austin, TX 78701

www.realmassive.com[17]                    Photo from CoStar Database



62.     That CoStar has not and would not authorize Defendants to copy, distribute,

republish, and publicly display its intellectual property also is a matter of common knowledge

in the industry.  Indeed, at the Urban Land Institute event discussed above, an audience question

---

[17] *One American Center, Suite 1600*, RealMassive,
https://www.realmassive.com/space/6039017686564864 (last visited May 20, 2015).

to RealMassive President McClure pointed out that "CoStar doesn't want you to share open data. They want people to pay for that."[18]

63.     Upon information and belief, Defendants' business model is to profit from others' intellectual property by selling subscriptions for a service that analyzes the data—including CoStar's copyrighted content—Defendants have collected.[19]

64.     CoStar and its affiliates have offered similar subscription services to the commercial real estate market for over a decade, but they use its subscription fees to cover the millions of dollars CoStar and its affiliates spend every year to create the professional photographs of commercial real estate and generate the other information in the CoStar database.

65.     By taking and publishing CoStar's content, including copyrighted photographs, without permission, Defendants' enterprise strikes at the heart of copyright law, and seeks to reap what it has not sown.

## V.     REALMASSIVE PRESIDENT MCCLURE'S HISTORY OF UNLAWFUL BUSINESS MODELS AND DISREGARD FOR INTELLECTUAL PROPERTY RIGHTS FURTHER CONFIRMS DEFENDANTS' WILLFUL AND VOLITIONAL CONDUCT

66.     For co-founder and president Joshua McClure, RealMassive marks another step in a career of disregarding others' intellectual property rights, and seeking to profit from them. That history further underscores the fact that Defendants' infringement of CoStar's intellectual property is willful and volitional.

---

[18] Urban Land Institute, *Increasing Real Estate's Bandwidth: Leveraging the Internet and Open Data Sources*, YouTube (Oct. 30, 2014), https://www.youtube.com/watch?v=cFPCIGStw20 (last visited May 20, 2015).

[19] David Holley, *RealMassive Pitches Data Analysis Tool for Commercial Real Estate*, Xconomy (Mar. 19, 2015), http://www.xconomy.com/texas/2015/03/19/realmassive-pitches-data-analysis-tool-for-commercial-real-estate/ (last visited May 20, 2015).

67.     Upon information and belief, in or around 2008, Mr. McClure became involved with a company called EasyAd, which sold software designed to enable unauthorized, automatic mass posting of listings or advertisements on craigslist.  craigslist, which operates the ubiquitous website www.craigslist.org, is the largest online classified advertisement website in the world. craigslist seeks to protect its business through its terms of use, which limit the manner and frequency with which advertisements can be posted to its website, and its website has security measures to enforce those limitations.  EasyAd's software was designed to circumvent craigslist's terms of use and those security measures.

68.     craigslist brought suit against EasyAd and its principal.  During that litigation, craigslist deposed Mr. McClure, who testified about EasyAd and its unlawful software.

69.     At the conclusion of the case, the United States District Court for the Northern District of California entered judgment against EasyAd and its principal (as well as EasyAd's alter ego or successor company) for $6.1 million, finding that they had violated both craigslist's terms of use and copyright law, the latter by intentionally circumventing craigslist's security measures.[20]

70.     Mr. McClure's EasyAd deposition revealed his affiliation with another company, Troopal, that also trafficked in software designed to automatically mass post advertisements on craigslist.  Undeterred by the district court's findings and craigslist's $6.1 million judgment against EasyAd, Troopal distributed and sold craigslist mass posting software derived from the unlawful EasyAd program.

---

[20] *See craigslist, Inc. v. Kevin Mesiab*, No. C 08-05064 (N.D. Cal. Nov. 15, 2010) [Dkt. No. 84], *report & recommendation adopted by craigslist, Inc. v. Kevin Mesiab*, No. C 08-05064 (N.D. Cal. Nov. 15, 2010) [Dkt. No. 86].

71.     Mr. McClure described himself as "the manager of the operations and marketing" at Troopal and stated that he had been the person to hire the team of programmers to work on, and update, the unlawful mass posting software.  Part of that work involved trying to circumvent lawful measures taken by craigslist to protect its website and business.[21]

72.     Troopal was incorporated in Panama and housed its servers there.  In his EasyAd deposition, Mr. McClure explained why:  This was a strategy specifically designed to remove the enterprise from the reach of United States law and make the company—as he put it—"craigslist bulletproof."[22]

73.     Indeed, Troopal's website boasted that "[t]he laws of Panama protect Troopal from being sued under U.S. law by Craigslist. . . .  Although it wouldn't be wise to go into detail, Troopal is protected legally and financially within the Republic of Panama."[23]

74.     In an online forum, Mr. McClure added detail about Troopal's efforts to avoid United States law and intellectual property owners—while at the same time revealing his business ethos of generating short term profits on the back of others' property while trying to avoid being tracked down:

> The server is hosted in Panama.  This is not a secret. . . .  The company running this is an offshore company owned by another offshore.  I'm an asset protection and privacy consultant under one of my hats.  I'd highly recommend you take advantage of something like this if you plan on continuing a career of making really large companies mad at you.  *It's very profitable in the short term and very*

---

[21] *See craigslist, Inc. v. Troopal Strategies, Inc.*, No. CV 09 04741 (N.D. Cal. Mar. 8, 2011) [Dkt. No. 56-4], Ex. L, at 50.

[22] *See craigslist, Inc. v. Troopal Strategies, Inc.*, No. CV 09 04741 (N.D. Cal. Mar. 8, 2011) [Dkt. No. 56-4], Ex. L, at 161:19–162:5.

[23] *See craigslist, Inc. v. Troopal Strategies, Inc.*, No. CV 09 04741 (N.D. Cal. Mar. 8, 2011) [Dkt. No. 56-1], Ex. C, at 19.

*harmful to your bank and credit score when they track you down.* If they find you, you can't win. I've already lost once.[24]

75.     Like RealMassive, Troopal targeted real estate professionals,[25] with perhaps half of Troopal's clientele composed of such individuals.[26] In fact, in his EasyAd deposition, Mr. McClure indicated that "brokers" were a key demographic for automatic posting software.[27]

76.     Undeterred by Troopal's efforts to avoid the reach of United States law, craigslist sued for a second time, bringing a variety of federal and state law claims, including a copyright claim, this time against Mr. McClure personally, as well as Troopal and other defendants. Mr. McClure attempted to defend his conduct for a short time, but ultimately defaulted.

77.     craigslist obtained an $8.2 million judgment against Mr. McClure and others for violating federal copyright law (the Digital Millennium Copyright Act), as well as the Computer Fraud and Abuse Act, the Lanham Act, and other laws.[28]

78.     Upon information and belief, Mr. McClure has not paid a cent of the outstanding judgment against him. Instead, according to a recent *New York Times* interview, Mr. McClure

---

[24] *See craigslist, Inc. v. Troopal Strategies, Inc.*, No. CV 09 04741 (N.D. Cal. Mar. 8, 2011) [Dkt. No. 61], at 7 (emphasis added).

[25] *See craigslist, Inc. v. Troopal Strategies, Inc.*, No. CV 09 04741 (N.D. Cal. Mar. 8, 2011) [Dkt. No. 56-4], at 45.

[26] *See craigslist, Inc. v. Troopal Strategies, Inc.*, No. CV 09 04741 (N.D. Cal. Mar. 8, 2011) [Dkt. No. 56-4], Ex. L, at 172:24-25.

[27] *See craigslist, Inc. v. Troopal Strategies, Inc.*, No. CV 09 04741 (N.D. Cal. Mar. 8, 2011) [Dkt. No. 56-4], Ex. L., at 125:16-18.

[28] *See craigslist, Inc. v. Troopal Strategies, Inc.*, No. CV 09 04741 (N.D. Cal. July 12, 2011) [Dkt. Nos. 66–67].

has invested almost all of his assets in RealMassive: "I liquidated basically everything I owned and put it into this company [i.e., RealMassive]."[29]

79.     As his experience with Troopal suggests, and upon information and belief, Mr. McClure launched RealMassive aware of his new company's unlawfulness. Indeed, speaking at the Urban Land Institute in his role as then-RealMassive chief executive officer, Mr. McClure explained why he thinks that despite federal and state laws protecting the CoStar database and other proprietary content, other "laws of nature" permit his company to violate intellectual property laws that he deems "unfair":

> [W]ho owns the [commercial real estate] data is actually not a debate at all. It's a contractual fact. . . . So, currently the proprietary closed systems [i.e., CoStar] say that they own that data and they have full authority to do whatever they want with that data, including cut you off from it. . . . As far as the laws of nature—all men are created equal sort of thing—the person or entity that owns the physical building clearly owns the data. Right? So where contractual law sort of gets into a weird predicament and becomes unfair is where contractual law is not meshed up with the laws of nature.[30]

80.     CoStar brings this action to vindicate its intellectual property rights under federal law and stop Defendants' willful infringement of CoStar's copyrights.

### CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### Direct Copyright Infringement Against Defendants

81.     CoStar repeats and realleges each and every allegation set forth above, and incorporates them herein by reference.

---

[29] Vivian Marino, *A Conversation with Joshua McClure*, N.Y. Times (Feb. 3, 2015), http://www.nytimes.com/2015/02/04/realestate/commercial/a-conversation-with-joshua-mcclure.html?_r=0 (last visited May 20, 2015).

[30] Urban Land Institute, *Increasing Real Estate's Bandwidth: Leveraging the Internet and Open Data Sources*, YouTube (Oct. 30, 2014), https://www.youtube.com/watch?v=cFPCIGStw20 (last visited May 20, 2015).

82.     Each of CoStar's photographs constitutes an original work of authorship and copyrightable subject matter under the laws of the United States.

83.     CoStar owns or has exclusive rights to all rights, title, and interest in and to the photographs.

84.     Defendants had and have access to CoStar photographs through the internet or other means.

85.     Defendants have copied, reproduced, republished, distributed to the public, and/or displayed publicly CoStar-copyrighted photographs—including without limitation those copyrighted works identified in Exhibit A hereto—without the consent or authority of CoStar, thereby infringing CoStar's copyrights.

86.     CoStar owns the exclusive rights in each of the photographs detailed in Exhibit A and has validly registered each of the photographs with the United States Copyright Office either before Defendants' acts of infringement or within three months of its first publication.  The registration number for each photograph is set forth in Exhibit A.

87.     Defendants' copies, reproductions, republications, distributions, and displays are identical and/or substantially similar to CoStar's photographs.

88.     RealMassive is directly liable for these acts of infringement in violation of 17 U.S.C. §§ 106 and 501.

89.     The Individual Defendants are jointly and severally liable for each act of RealMassive's direct infringement because, upon information and belief, they personally directed and participated in and benefited from RealMassive's infringing conduct as alleged above.

90.     The infringement of CoStar's rights in each of its copyrighted photographs constitutes a separate and distinct act of infringement.

91.     Defendants' acts of infringement have been willful, intentional, purposeful, and in disregard of CoStar's rights under the Copyright Act.  Defendants knew their acts were infringing and intentionally or recklessly disregarded the law by their conduct.

92.     CoStar did not authorize Defendants' acts.

93.     CoStar believes that additional instances of Defendants' infringement of its copyrighted photographs will be revealed during the discovery process.

94.     As a result of Defendants' willful copyright infringement, CoStar has been and will continue to be damaged as a direct and proximate result of the infringing acts set forth above, and Defendants have been unjustly enriched by their unlawful infringement of CoStar's copyrighted photographs in an amount to be proven at trial.

95.     Defendants' conduct also has caused irreparable and incalculable harm and injuries to CoStar and is ongoing.  Unless enjoined, Defendants' conduct will cause further irreparable and incalculable injury, for which CoStar has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
### Contributory Copyright Infringement Against the Individual Defendants

96.     CoStar repeats and realleges each and every allegation set forth above, and incorporates them herein by reference.

97.     RealMassive has directly infringed CoStar's works to which CoStar owns exclusive rights under copyright—including without limitation those copyrighted works identified in Exhibit A hereto—by copying, reproducing, republishing, distributing to the public, and/or displaying publicly CoStar-copyrighted photographs owned by CoStar, without authorization from CoStar, or right under law, in violation of the Copyright Act.  The Individual

Defendants are liable as secondary infringers under the Copyright Act for each act of direct infringement of CoStar's works by RealMassive.

98.     The Individual Defendants are liable under the Copyright Act for the infringing acts of RealMassive as contributory copyright infringers.  The Individual Defendants had actual and constructive knowledge of RealMassive's infringement of CoStar's copyrighted works. Despite having that knowledge, the Individual Defendants continued to cause, contribute materially to, and/or induce that infringement as set forth above.  Without the active and material contributions from the Individual Defendants, the infringement CoStar details above could not have taken place.  The Individual Defendants therefore are contributorily liable for RealMassive's direct infringement of CoStar's copyrighted works in violation of the Copyright Act.

99.     The Individual Defendants likewise are liable for the acts of infringement identified above for acting in concert with RealMassive to operate the RealMassive website and for personally directing, participating in, and benefiting from RealMassive's infringing conduct as alleged herein.

100.     The Individual Defendants' acts of contribution to copyright infringement have been willful, intentional, purposeful, and in disregard of CoStar's rights under the Copyright Act. The Individual Defendants knew that their acts were infringing and intentionally or recklessly disregarded the law by their conduct.

101.     CoStar did not authorize the Individual Defendants' acts.

102.     CoStar believes that additional instances of Defendants' infringement of its copyrighted photographs will be revealed during the discovery process.

103.    As a result of the Individual Defendants' willful contribution to copyright infringement, CoStar has been and will continue to be damaged as a direct and proximate result of the infringing acts set forth above, and the Individual Defendants have been unjustly enriched by their unlawful infringement of CoStar's copyrighted materials in an amount to be proven at trial.

104.    The Individual Defendants' conduct also has caused irreparable and incalculable harm and injuries to CoStar and is ongoing.  Unless enjoined, the Individual Defendants' conduct will cause further irreparable and incalculable injury, for which CoStar has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, CoStar prays for judgment against all Defendants as follows:

A.    For an order pursuant to 17 U.S.C. § 502 permanently enjoining and restraining Defendants and their officers, agents, servants, and employees and all those in active concert or participation with them from directly committing, aiding, encouraging, enabling, inducing, causing, materially contributing to, or otherwise facilitating the infringements of CoStar's exclusive rights under the Copyright Act, or from authorizing any other person to do the same;

B.    For an award pursuant to 17 U.S.C. § 504 of CoStar's actual damages and Defendants' profits or, alternatively at CoStar's election, for statutory damages for Defendants' infringement and willful infringement—including without limitation for the instances of infringement identified in Exhibit A, and other instances of infringement uncovered during discovery—in the maximum amount allowable by law;

C.    For a finding that Defendants have willfully infringed CoStar's federally registered copyrights;

D.   For an award of CoStar's costs, including its reasonable attorneys' fees;

E.   For pre-judgment and post-judgment interest according to law;

F.   For such further and additional relief as the Court may deem just and proper.

## DEMAND FOR A JURY TRIAL

CoStar demands a trial by jury on all issues properly tried to a jury.

Dated:  May 22, 2015                    Respectfully submitted,

Christopher D. Sileo (Texas Bar No. 24027977)
SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, TX 78701
(512) 495-6300
(512) 495-6399 (facsimile)
csileo@scottdoug.com

Nicholas J. Boyle (*pro hac vice pending*)
David Randall J. Riskin (*pro hac vice pending*)
Eric J. Hamilton (*pro hac vice pending*)
WILLIAMS & CONNOLLY LLP
725 12th Street, N.W.
Washington, DC 20005
(202) 434-5000
(202) 434-5029 (facsimile)
nboyle@wc.com
driskin@wc.com
ehamilton@wc.com

*Attorneys for CoStar Realty Information, Inc.*